# IN THE COURT OF APPEALS OF IOWA

No. 25-0967
Filed July 8, 2026

**In the Matter of the Estate of Hugh C. Richardson**

**O'Connor & Thomas, P.C.,**
Appellant.

Appeal from the Iowa District Court for Dubuque County,
The Honorable Monica Zrinyi Ackley, Judge.

**REVERSED AND REMANDED**

Peter D. Arling (argued) and Alyssa M. Carlson of O'Connor & Thomas,
P.C., Dubuque, attorneys for appellant.

Susan M. Hess (argued) of Hammer Law Firm, P.L.C., Dubuque,
attorney for appellee.

Heard at oral argument
by Tabor, C.J., and Chicchelly and Sandy, JJ.
Opinion by Chicchelly, J.

1

**CHICCHELLY, Judge.**

The law firm of O'Connor & Thomas, P.C. (the Firm), appeals the order setting the amount of attorney fees to be paid by the Estate of Hugh C. Richardson (the Estate) for work performed as the designated counsel for the Executor, Dubuque Bank and Trust. The Firm contends that the district court erred in reducing the amount of ordinary fees it requested and denying its request for extraordinary fees. Because the district court abused its discretion by reducing the request for ordinary fees and denying the request for extraordinary fees, we reverse and remand for entry of an order approving the fee application in its entirety.

## BACKGROUND FACTS AND PROCEEDINGS

In December 2023, Dubuque Bank and Trust petitioned for probate of the "Last Will and Testament of Hugh C. Richardson," executed in March 2023. The will named Dubuque Bank and Trust as Executor, and Dubuque Bank and Trust designated the Firm as its attorney.

Hugh's will lists his family as his wife, Evelyn,[1] and his two sons, Michael and Chad. Although the will makes no provisions for Evelyn or Michael, it expressly excluded Chad because Hugh "provided for him in other ways during [his] lifetime."[2] The will provides for the residue of the

---

[1] Evelyn and Hugh married in 1987. Evelyn petitioned to dissolve the marriage two weeks after Hugh executed the will, but Hugh passed away before the trial.

[2] This provision refers to an option agreement for Richardson Investments, LLC, dated in August 2017. Hugh and Evelyn each owned 50% of the business. The agreement provides a process for Chad to buy shares of the business when Hugh or Evelyn die.

Chad manages Richardson Investments. The corporation's primary asset is thirteen acres of land. Richardson Investments built a car dealership on the land at a cost of $11,000,000. Since January 2019, Richardson Investments has leased the land to

Estate to pour over and pass to the Hugh C. Richardson Trust, created in 2010. Evelyn is a one-third beneficiary of the trust, and Michael is a two-thirds beneficiary.

The district court noted that in the months that followed, "standard procedures under the probate code were addressed," like "publishing of notifications and filing oath and designations."

On April 29, 2024, Evelyn petitioned for spousal support. She also petitioned for declaratory judgment to set aside the option agreement for Chad to buy shares of Richardson Investments, arguing it was a postnuptial agreement. Because the Firm was concurrently representing Chad, the action created a conflict of interest by pitting Evelyn, as a beneficiary of the Estate, against one of the Firm's clients. The Executor designated new counsel on May 17. The Firm moved for leave to withdraw on June 17, which the court approved on July 2.

In November 2024, the Firm applied for attorney fees for work it performed while serving as the Executor's attorney. The Firm requested $11,866.50 in ordinary attorney fees and $74.02 in expenses. The Firm also alleged that it incurred $21,473.00 in fees for extraordinary services. Both the Executor and Michael consented to the application, but Evelyn objected to the fees as "exorbitant given the actual work provided."

The district court held a hearing at which it heard arguments from counsel. No testimony or evidence was offered at the hearing. Afterward, the court ordered the Estate to pay ordinary fees and expenses to the Firm

---

Richardson Motors Corporation, of which Chad is the sole shareholder. Richardson Motors's monthly rental payments to Richardson Investments are applied entirely toward that debt and property taxes. The debt has since been reduced to about $9,000,000.

after reducing the amount of ordinary fees to $7,461.00. The court denied the Firm's request for extraordinary fees. The Firm moved the court to reconsider its ruling, which the court summarily denied. The Firm appeals.

## SCOPE AND STANDARD OF REVIEW

With some exceptions, probate actions are tried in equity and reviewed de novo. *See* Iowa Code § 633.33 (2023) (stating that with certain exceptions, matters triable in probate are equity proceedings); Iowa R. App. P. 6.907 ("In equity cases review is de novo."). This includes proceedings to award attorney fees that are part of the costs of administrating an estate. *See In re Est. of Bockwoldt*, 814 N.W.2d 215, 221 (Iowa 2012). The court gives weight to the district court's fact-findings, especially those based on witness credibility, but is not bound by them. *In re Simon's Est.*, 288 N.W.2d 549, 551 (Iowa 1980).

We review the district court's decision on extraordinary fees for abuse of discretion. *Bockwoldt*, 814 N.W.2d at 222. An abuse of discretion occurs when the court exercises its discretion on grounds or for reasons that are untenable or to an extent that is unreasonable. *Id.* A ground or reason is untenable if it is not supported by substantial evidence or if it is based on an error of law. *Id.* The court "will interfere with a probate order regarding attorney fees that lacks adequate or sufficient support in the evidence." *In re Myers' Est.*, 29 N.W.2d 426, 427 (Iowa 1947). Because the court's exercise of discretion must be reasonable, the court should reduce attorney fees that are clearly excessive or increase those that are manifestly inadequate. *Id.*

## DISCUSSION

The Firm challenges the attorney fees the court awarded it for work it performed while acting as the Executor's attorney. It contests the award of

4

ordinary fees, which the court reduced from the amount requested. The Firm also contends that it should be awarded extraordinary fees, which the district court completely denied.

## I.     Attorney fees for ordinary services.

Iowa Code section 633.198 allows attorney fees for the executor's attorney to be taxed as part of the costs of administration of the estate. The court decides what fee is reasonable for the attorney's services, but the fee cannot exceed the schedule provided in section 633.197. Iowa Code § 633.198. The measure for these "ordinary" attorney fees is the reasonable value of the services performed. *In re Est. of Bolton*, 403 N.W.2d 40, 43 (Iowa Ct. App. 1987). In deciding the value of these services, the court may consider the "competence and efficiency exercised in the estate, size of the estate, actual time devoted to the estate, nature and difficulty of the services performed, fee customarily charged for similar services, results obtained, and experience of the attorney or executor." *Est. of Randeris v. Randeris*, 523 N.W.2d 600, 607 (Iowa Ct. App. 1994). Attorneys seeking compensation for ordinary services must provide "proof of the nature and extent of responsibilities assumed and services rendered." Iowa Ct. R. 7.2(2). The court may rely on the contents of the court probate file as proof. *Id*.

The Firm first contends that the court's order has factual errors and unsubstantiated findings. Chief among these is the suggestion that the Firm should not have represented the Executor due to a conflict of interest. The court cites two events as creating a conflict. First, it found that the Firm entered an appearance in Hugh and Evelyn's divorce by moving to quash a

5

subpoena on behalf of Chad and his business.[3]  Second, the court found that the Firm helped create the option agreement for Richardson Investments, which Evelyn claimed was a postnuptial agreement.  The court concluded, "These representations by the firm created a conflict that required [the Firm] to withdraw from this matter.  It is questionable as to whether he should have entered an appearance for the executor."

The Firm repudiates the claim that it represented Evelyn individually as "unequivocally false and . . . unsupported by the record," as well as disputed during the declaratory judgment proceedings.  It notes that the allegation of prior representation was never raised in any filings related to the fee application or at oral argument, and no evidence was admitted about the claim.  We agree that no conflict arose until Evelyn petitioned for declaratory judgment, at which time the Firm withdrew its representation.

The Firm next challenges the reasons the court cited for reducing the amount of ordinary attorney fees by $4,405.50.  The court gave the following explanation for doing so:

> A considerable amount of time in the billing statements show contact between [the Firm] and Chad and Attorney John Nemmers of Dubuque Bank and Trust.  There are duplicate entries in the billing statement for ordinary fees.  There are entries for the preparation of a final report as early as January 16, 2024.  [The Firm] did not file documentation to resist Evelyn's spousal support application.  [It] did not file an inventory.  [It] did not appear at any court hearings.

After purporting to remove the duplicate entries and the entries related to preparing the final report and performing the inventory, the court found the

---

[3] Because Chad was expressly excluded as a beneficiary under the will, this representation did not create a conflict of interest.

Firm provided $7,461 of reasonable services for the Executor. It awarded ordinary attorney fees in that amount.

The court may reduce the amount of attorney fees awarded if those fees are duplicative or were not reasonably expended. *See Boyle v. Alum-Line, Inc.*, 773 N.W.2d 829, 833 (Iowa 2009) (analyzing attorney fees awarded for claims brought under state and federal civil rights acts), *cited with approval in Bockwoldt*, 814 N.W.2d at 231 (noting the same factors listed in section 633.199 are used for awarding attorney fees under the state and federal civil rights acts). It must look at the whole picture and use independent judgment to decide on a proper total fee for handling the complete case. *Id.* Although there is no precise rule or formula for making these determinations, the court must make detailed fact-findings about the factors it considered. *Id.*

In reducing the amount of attorney fees requested by the Firm, the court did not cite which entries it found were duplicated or explain how they were duplicated. For instance, it is unclear why the court found the Firm was not entitled to any compensation for undertaking work to advance the Estate's inventory simply because another attorney filed the final report. The court did not specify why it found the communication with the Executor and Chad was not relevant to resolving the Estate. Nor did the court say how many hours it found the Firm overbilled for each category cited in its ruling or the total amount of hours it reduced the final bill. The ruling focuses on services the Firm did not perform instead of deciding the value of the services it did perform.

The court's reasoning for reducing the amount of ordinary fees is unjustified, and we conclude any reduction is unwarranted. The Firm is entitled to ordinary attorney fees in the amount requested of $11,866.50.

7

## II.    Attorney fees for extraordinary services.

In addition to ordinary fees, an estate's attorney may be compensated for "actual necessary and extraordinary expenses or services" provided to the estate. *Bockwoldt*, 814 N.W.2d at 224 (quoting Iowa Code § 633.199). "Necessary and extraordinary services shall be construed to include *but not be limited to* services in connection with real estate, tax issues, disputed matters, nonprobate assets, reopening the estate, location of unknown and lost heirs and beneficiaries, and management and disposition of unusual assets." Iowa Code § 633.199 (emphasis added). The statute sets out a nonexclusive list of relevant factors for the court to consider in deciding the value of extraordinary services:

> 1. Time necessarily spent by the personal representatives and their attorneys.
>
> 2. Nature of the matters or issues and the extent of the services provided.
>
> 3. Complexity of the issues and the importance of the issues to the estate.
>
> 4. Responsibilities assumed.
>
> 5. Resolution.
>
> 6. Experience and expertise of the personal representatives and their attorneys.

*Id.*

Attorneys seeking extraordinary fees must provide "a written statement showing the necessity for such expenses or services, the responsibilities assumed, and the amount of extra time or expense involved" and "explain the importance of the matter to the estate and describe the

results obtained."[4]  Iowa R. Ct. 7.2(3).  The burden of proving an allowance for extraordinary fees is on the attorney seeking them.  *Id.*

In its fee application, the Firm alleged that it incurred $21,473.00 in fees for extraordinary services.  It listed ten circumstances that relate to and resulted in extraordinary services:

- Evelyn's withdrawal of funds from bank accounts that belonged to the Estate, which resulted in overdrafts;

- a dispute over the ownership of a vehicle owned by Richardson Motor and used by Hugh and Evelyn until their separation in March 2023;

- Evelyn's request for a spousal allowance;

- the status of tax payments for the year 2023 and discussion of whether the parties would file a joint return;

- a three-month delay in obtaining a death certificate;

- Evelyn's declaratory judgment action against Richardson Investments, which affected the value of Hugh's interest in the business;

- Chad's exercise of the option agreement to buy shares in Richardson Investments, which led to two appraisals and discussions about a third;

---

[4] The first bill the Firm provided did not include the time spent on each task.  In February 2025, the Firm updated the bill to detail the time spent on each task.

- obtaining outstanding mortgage balances on the loan by Richardson Investments to calculate the purchase price under the option agreement;

- releasing Hugh from personal liability for the $9,000,000 debt owed by Richardson Investments if Chad exercises the option to buy Hugh's business interest; and

- issues arising from Hugh and Evelyn's dissolution proceedings and the acrimony born from it, which resulted in voluminous email exchanges with Evelyn's attorney involving extraordinary matters.

The district court rejected the Firm's claim for extraordinary fees in their entirety. The first reason cited by the court was that the Firm did not need to provide any tax-related services:

> The engagement letter dated January 2, 2024, to the executor indicated the estate would not have to file an Iowa Inheritance/Estate Tax Return or a Federal Estate Tax Return as the estate is valued at less than 12.9 million dollars. Income tax returns would need to be filed, but those were not prepared by [the Firm].

But as the statute makes clear, services provided in connection with tax issues are one type of service considered necessary and extraordinary. *See* Iowa Code § 633.199 (listing seven categories of services the court shall construe as necessary and extraordinary services). The services listed in section 633.199 as necessary and extraordinary are not limited to those listed in the statute. *See id.* (stating that necessary and extraordinary services "shall be construed to include but not be limited to" the services listed in the statute); *Bockwoldt*, 814 N.W.2d at 225 (holding that "it is not possible to define a precise test of what services are extraordinary as opposed to ordinary").

Although the Firm did not prepare income taxes, its request for extraordinary attorney fees included services related to tax matters. The Firm undertook work to discern the status of tax payments for the year 2023 and whether Hugh and Evelyn would file a joint tax return. The record shows that the Firm's attempts to correspond with Evelyn's attorney were not reciprocated, which delayed resolution.

The court also denied the Firm's request for extraordinary fees based on the conflict created when Evelyn petitioned for spousal support and declaratory judgment. The court opined that the Firm's services should have ended when the conflict arose, and any services it performed related to those matters were for the benefit of Chad, not the Estate. The court did not explain how it arrived at its conclusion or which of the extraordinary services listed in the application benefitted someone other than the Estate.

The litigation filed by Evelyn affects the value of the Estate. The beneficiaries of the Estate are Evelyn and Michael. Chad was expressly excluded as a beneficiary. The first entry in the billing for extraordinary services was for a phone call with Evelyn's attorney in which they discussed a spousal allowance. The same entry includes time the attorney in charge at the Firm spent researching spousal allowance because it was the first time he dealt with a surviving spouse requesting spousal allowance in almost fifty years of practicing law.

At the hearing on the fee application, one of the Firm's attorneys addressed the allegation that some of the billing entries in the fee application "were in hostility to one of the beneficiaries and for the benefit of another." She explained that research on spousal allowance was needed to understand the statute and the conditions in which it allowed, not in hostility to Evelyn's position but to look out for all beneficiaries in his capacity as attorney for the

11

Executor. The $369,000 of spousal allowance Evelyn requested would affect the value of the Estate. Likewise, Chad's exercise of the option agreement and the corresponding appraisals of Richardson Investments affected the value of the Estate. The fact that the Firm was not directly involved in the litigation that followed does not negate the performance of work on these matters.

The court also denied extraordinary fees because it found that the Executor performed similar legal services, so the services were duplicative. The court found that "it is unreasonable that the estate should pay twice for the same services such as retention of an appraisal of a vehicle and the issues regarding a personal debt that was released years ago when the Option Agreement was executed in 2020." It is unclear why the court found that the legal services were duplicative. Although one of the agents of the Executor is an attorney, there is no evidence suggesting he served the Estate in a legal capacity rather than as a fiduciary.

Finally, the court found that the Firm is not entitled to extraordinary fees because only "one small claim" was filed against the Estate, which was satisfied "in less than two weeks" and did not result in litigation. Again, the focus should be on the services the Firm provided and whether they were those that, both in character and amount, are beyond what is usually needed. *Bockwoldt*, 814 N.W.2d at 228.

The reasons for denying the Firm's request for extraordinary fees are not supported by the evidence. The district court therefore abused its discretion by denying extraordinary fees. We review the sufficiency of the filing supporting the Firm's request for extraordinary fees de novo. *Id*. at 222. Because we find that the services billed as extraordinary fees are justified, the

12

Firm is entitled to an award of the total amount of extraordinary fees billed in its fee application, which total $21,473.00.

## III.   Conclusion.

We reverse the district court's order on the Firm's fee application and remand to the district court with directions to grant the fee application in its entirety.

**REVERSED AND REMANDED.**